23310 Travelers Property Casualty Insurance Company v. Kamesha Davis Ms. Rose you're here on behalf of Travelers whenever you're ready Good morning your honors and may it please the court I'm Sarah Rose Daly for Appellant Travelers in this case. I'd like to start by first addressing the jurisdictional question the court raised and asked us to address an oral argument regarding whether or not the jurisdictional amount is met in this case. I direct the court's attention to the answer and complaint filed in this below in which in her answer Ms. Davis admitted the allegation that she's in a demand for the entire $100,000 under insured motorist coverage limits from Travelers and if the court needs further evidence your support for that. Yes what was the basis for that is there anything beyond just the bare assertion of $100,000 that's supported by medical bills or anything else? No she claimed over $80,000 in medical bills and we can submit the actual demand if the court would like as well to supplement the record. That would be helpful thank you. Thank you. Why don't you go ahead and do that and Mr. Dunham you can respond if you if you would like once she does that so can you do that and by let's say next Friday? Yes your honor. Okay and you've got a week after that to respond if you would like. Yes your honor and if I may make this report real quick. It's okay stand. I concede with Travelers points in regard to amount of controversy questions. Right the problem is and we appreciate that the problem is that parties can't confer jurisdiction by agreement so so we'll have Ms. Rose file the other papers which indicate the $80,000 plus in medical expenses and then you can if you agree with that you can just say those are correct and that'll be fine. Okay thank you your honors. Okay. Sorry turning to the issues in this case there are two prominent issues. The first is whether Appellee Kamisha Davis actually established residency at the Highway 308 house owned by her mother who was Travelers policyholder and the second second is whether her mother actually established a household at the Highway 308 house. When Ms. Davis moved into her mother's house at Highway 308 she testified that she intended to be a temporary stay while she planned her move to Florida and while she helped her out after her brother's death. This was in November 2020. Both her mother and Ms. Davis testified that her stay was intended to be temporary and at the time she was quarantining because she had contracted COVID it was 2020 which forced her to stay in Georgia until she could move to Florida where she already had a job and section 8 housing lined up. Sorry this might just be the way that I'm processing it but can we actually talk about the household question first because here there are arguably two different households right? Yes that's that's the Travelers position just that there are two different households and we base that on. Under Georgia law can a person have two different households? There's no legal precedent saying that. The Georgia court in McCullough v. Reyes which is 287 Georgia app 483 defined the policy owners household as the establishment under the members of the family and others who live under the same roof and they specifically divided household as having a common roof. In this instance. Think of a wealthy couple who have a residence in New York with the entire family and then they pick up and go and go to Naples for the winter and they spend six months in Naples. Do they have two households? They have two residences. Which is the household? The household and residence are distinct entities under Georgia law. Which is the household? The household is the is the family unit together under one roof. In my hypothetical the family unit moves as one. A couple with two kids including a couple of children who are in college and they all live together in New York and Manhattan for six months and then they move to Naples and move and live together again as a single family unit for another six months. Right in that in that instance the household would be wherever the family is. The household is the family unit together not that location of the family union but where they are staying together as a household. Right so in my hypothetical where's the household? The household is wherever the family is because the family the household is defined by the people living in the house not the actual house itself. The family is in two places. The family has a household that moves from residence to residence. So let's suppose instead of moving seasonally they move like every other week. Right. Would you say the household switches back and forth every week? I think the household would move with the family unit. Whoever like wherever the family the family living together or they live under the same roof wherever they're living at that moment and they tend to stay on a permanent or frequent basis then I think the household would be wherever they lived wherever they were at that any given time. And that's a unitary requirement? In other words you can't when you have one household at a time. I would argue that it depends on where the policy owner and where he establishes his family unit is at any given moment in time. So if you're living if you ordinarily live together under the same roof as the policy holder you're part of that household. But if you live in a separate house ordinarily even if it's a property owned by the house by the policy owner that's not part of the household because you're not living under the same roof as the policy holder. What authority says that? McCullough v. Reyes is the only Georgia authority that attempts to define household and it defines it as a domestic establishment including the members of a family and others who live under the same roof and also as a family living together. With a family meaning a collective body of persons who live in one house or within the same heritage or one head or management. Well at the time of the accident here why wasn't a household at the highway 308 property? Because Ms. Teresa Davis testified that she lived at the East Jefferson Street house. Not all the time she worked she was there basically working at the assisted living facility that she ran. But she testified specifically that she lived there all of her life and that she considered that her home and that she slept there every night and only utilized the highway 308 house to sleep maybe every other weekend when there are people to cover for at her business. I want to talk about McCullough that you mentioned. In that case there were two separate families and they lived in separate houses on the same property and they didn't enter each other's houses without permission. So that seems to me completely different from this situation where both the family members are living together in the house at least some period of time. Correct but they never merged their households and I don't that's a separate question because the questions kind of lead into each other. But I think that would go to whether or not the households were merged and because Teresa did not stay there and they both intended Ms. Davis to stay at the house to be temporary and Ms. Davis testified that she always intended to move to Florida until her accident injured her so much that she was no longer able to move to Florida. And they both bought their own groceries. They maintained separate checking accounts. Ms. Davis had her own insurance policy and Ms. Teresa was the only one who paid the utility bills because they were in her name because she owned the house. But even if Kamisha Davis had intended to move to Jacksonville how does is it your position that future intent alone is enough to defeat residency? No I think the fact that they didn't consider her stay to be permanent. In order to establish residency you have to either utilize the facilities frequently or intend your move there to be permanent. Both Teresa and Ms. Kamisha Davis testified that they didn't consider the stay to be permanent with Teresa testifying that they didn't consider it permanent until a year or two after she moved in. But that but if you if you focus too much on intent you're sort of making residents tantamount to domicile which the courts have said is the Georgia courts have said is very different with these types of insurance clauses. Right it's not intent to stay somewhere it's intent to merge households that's the issue. Why why do you need to merge a household if you she's she's been living there she was living there for 20 straight days right? Kamisha was. Right. Why isn't that a residence of hers? Put the household out for a second. If she's living in a place for 20 days and is going to keep living there for a period of time thereafter why is she not a resident of that property she's living in? She is a resident of the property she's not a resident of the household. The household matters because the household is what the policy is aims for with the relative resident provision for insurance. You had to be a resident of the household and the households have to merge. At that time Kamisha had her own household she intended to move that household to Florida she didn't intend to stay at the highway. She had no household anymore she was living with her at her mother's house. This is the issue in this case is the difference between residence and house and household. They're two fundamentally different things. Residence is the physical location where you stay. Household is the family unit living under the same roof together and contributing to like the bills and household management. If you have same facts as here but the parent the single parent has 24-hour shifts at his or her job four days a week three days a week say a firefighter for example and comes to live in the house two or three days where the child is located is that a household? Yes your honor because I don't think that. How's that different from our situation here where Teresa goes home on weekends or every other weekend from the place where she does her job? I think the distinction is that it's not just a place she does her job it's also her her lifelong home it's where she always lived she testified. Do you disagree that she was using it at this point as a business? She was also using it as a business it's a home business but she was also living as a business. So let's say I mean if she's using it as her business what is the distinction between Judge Jordan's hypothetical you have a firefighter who's sleeping at a fire station his place of his or her place of employment in this situation where it's Teresa Davis is sleeping at her place of employment? Because the firefighter doesn't own that fire station he hasn't lived there in his entire life and hasn't considered his home. All right thank you very much you've saved your time for rebuttal. Thank you. Good morning your honors may it please the court. Good morning. My name is Laron Dunham and I represent Defendant Appellee Kamisha Davis. I would like to address some of the points mentioned in travelers arguments in their brief. I feel and as some of your questions reflected the facts firmly established Ms. Davis's intent to reside with her mother and to merge both of those households. An important factor as travelers mentioned counsel in determining whether an individual is a resident of insured household is intent. The record reflects through deposition testimony of both Ms. Davis and her mother Teresa Davis that not only did Ms. Davis keep a physical presence at the highway 308 address but that due to the unfortunate passing of her brother she intended to remain at her mother's house for an indefinite period of time. But at a point prior to that she also did say that she was planning to move to Jacksonville right? Yes your honor. So how's I mean I guess the problem is how is that not a an issue of fact then that's now disputed and should go to a jury to decide what her residence was it at that time? At the time of her accident she did not sign a lease. There was no firm move-in date and between the time that she lived at the highway 308 address up until the time of her accident she got a job out in Georgia around the area I believe going door to door in regard to folding. Furthermore she didn't establish a physical presence anywhere else at that moment. Do some insurance policies if you know have language requiring an intent to stay for some duration as opposed to here where it says residency plus household? Some of the cases that I've reviewed they've been a lot more specific in making that determination to in regard to length of residency and whether it's going I know I'm bleeding probably into the second into the second issue but in regard to what would constitute as a residence whether it's like one residence that specific residence that's on the policy or not. So going to your point Judge Pryor if that's what travelers intended they could have easily done so in the policy as they construed it as they drafted that contract that policy. Are there are there issues of fact do you think going back to Judge Kidd's question about household in this case given the fact that there were two properties at which Teresa Davis slept and or lived? And your honor as you mean in reference to Miss Davis or to her mother? I'm sorry? In reference to Miss Davis or her mom. No no Teresa Davis yes slept in lived in two of the properties right? Correct. Given that as an undisputed that part is undisputed I think yeah does that create an issue for a jury as to where the household was? Where Teresa Davis's household was? No an individual can have multiple residences that that's fair. Now in regard to the household is the fact that throughout her deposition testimony Miss Davis the mother she referred to the highway 308 address as her home. Her home. And another factor that comes into determining a household is financial interdependency or financial independency. It's clear through the testimony that the mom covered the utilities. It's clear that the mom that those utilities were paid out for checking account. The record reflects that her Miss Davis and the 503 Jefferson property on her tax returns and on this policy. I mean it seems like there's a lot in dispute factually about where the household should be considered. Do you disagree with that? Yes your honor going back to your points your points and questions with Travelers Council. It's clear that the 503 address was used the Jefferson Street address was used for her business the assistant living. She slept there as part of the business. Same as when a firefighter has to sleep at the fire station. Similar to that fact the record reflects that she referred to the highway 08 address as her home. She did not refer to the 503 Jefferson Street address as her home. But didn't she say she had lived at the 503 East Jefferson Street address all her life? She did say that but that was responding to the question being asked by opposing counsel during deposition. Did you ever live at 503 East Jefferson Street? She will go on to qualify that statement with that's where I grew up in. Teresa's like for example your honor if you asked me where I was from I would say I'm from Savannah. Even if right after this hearing I decide let me stay in Atlanta for a couple more years. If you ask me two years down the line Mr. Dunham where are you from? I would likely answer in that same way I'm from Savannah because that's where I was raised. That was where my childhood home is. And that was her intent when answering that question during deposition. Can you point to any cases where an insured household was determined to encompass more than one residence? Yes your honor. One such is Travelers Insurance versus Nixon. In that example there was a 19 year old boy unfortunately he was killed in the car crash that was the point of contention in that case. He was found to be a resident of his father's household and was supported coverage under the father's policy even though he lived in an apartment in another city where he worked to save money but returned to his father's house almost every weekend similar to what Teresa Davis was doing coming to the highway 08 address almost every other weekend and maintain the room there and maintain the household. But that case involved the child moving from place to place not the parent moving from one residence to another. I think that I don't want to speak for her but I think that's what Judge Pryor is asking you are there any cases in Georgia or elsewhere that discuss the possibility of a household being located in two different places depending on where the matriarch for example happens to be living at a moment in time? No your honor but our contention would be that her household would be at the highway 08. All right let me let me ask you I thought about asking you this question I I wondered whether to do it or not but I'm going to I think it might help. If Kamesha had lived at the 50503 East Jefferson property with her mother because there was a spare a spare bedroom yes would that be the household? Assuming all the other facts are the same. Nothing else changes? Yes your honor I would concede to that point in that scenario. So household depends on where Kamesha lives and now where Teresa lives? It would be depend on the financial circumstances and how they convene as a family. In that scenario your honor assuming the kids would be with Kamesha also in that hypothetical they would be eating dinner together yeah I didn't mean okay they will be eating dinner as a family at that residence likely that financial dynamic would be dissimilar if not the same in which Miss Davis Teresa would cover Kamesha's bills well not her bills but cover the utilities. If the two of them mother and daughter shifted from one residence to the other every week and just moved kept moving where would the household be? Where would Teresa's household be? Do you think? And you mean moving to different residences or? No the two residences here the 503 East Jefferson and the highway 308 and for whatever reason every week they move so week one of the month they live at 503 East Jefferson second week they live at highway 308 go back to East Jefferson go back to highway 308 where's the household located? Well your honor I would feel that it would be fluid in that matter because the household question comes into play after the resident the residents the residency and Georgia law has established that and ensure to have multiple residents. Right I think that's you're right about that I think that's clear Georgia says you can have multiple residences and that's not a problem but here you've got the household language in the policy too so you have to consider not only residency but household as well. And it all would be dependent on which resident they which property they recited at at the time of the accident so let's say the accident happened and they were flip flopping back and forth on a weekly basis and on that week that the accident occurred they were at the 503 property then it would be our then it would appear that household would have been at the 503 address. Okay. Sean. And when it's all said and done with travelers preparing the contract of adhesion and it's the duty on them to make the terms precise and clear and that the ambiguous terms any insurance policy should be construed in favor of Ms. Davis of our insurer to the maximum limits. They could have easily been more specific when defining what the residence is. They could have been more specific in defining what encompasses as a household. The fact that it's left for the courts to construe and interpret Georgia law makes that pretty clear that it has to be construed in our favor. And if there's no more questions for me or any additional questions thank you for your time your honors. All right thank you very much. Okay Ms. Rose so you get the same question they shift and it's a variant of the question that Judge Pryor asked you before. They change every week from 503 East Jefferson together they just move the entire family unit moves. They live seven days in one seven days in the other. Where's the household? I think the household is still wherever Teresa Davis is and whether or not she's in both places. So where's the household? Where she is at any given moment. Where she lives. So the household can shift. The location can shift with her if she. So does this case depend on whether or not on the week of the accident Teresa was living at 30 at Highway 308? No your honor. Why not? You said it shifts. It shifts with her if the family unit is living together. However in this case it still depends on whether or not they merged households and where do you get this merger thing from? The merger thing comes from. It's not in the policy. No it's in the case law. It's in well-established Georgia case law. It says that in order to be a resident of someone's household you have to merge households with them if you're living in the same residence. So it's not enough to stay in the same place household and the same house and be living in the same place. Who was paying for Camisha's expenses while she was living at Highway 308? Camisha was paying for her own groceries and her children's own groceries. She was paying for her own expenses. I thought I thought the record was very different on that score. Well Teresa I mean Teresa was paying for her I'm sorry I'm getting names confused. Teresa was paying for that the house. Yes. And the utility bills because it's her house. If you're going to stay with your mother on a temporary basis you don't take over paying the bills for it. Which is what happened. You'd be surprised. Well you don't I mean if you're staying with a friend you don't do that. I mean that that's that's. Friends are different. Friends are not family. Well if you're staying with anybody you don't for like a temporary period you don't typically take over paying their like electric bill. You might give them some money to defray the cost that you have. So what did what did what did the two ladies testify about the division of costs and expenses at the Highway 308 property? They testified that Teresa paid the utility bills and Camisha bought her own groceries and the groceries for her children and although sometimes they would eat meals together Teresa typically bought her own groceries. So there was no like intermingling of household expenses in that respect. And I paid on that property or no? I'm Teresa. I'm not sure if it's mortgage. I'm pretty sure it was mortgaged. It might have been paid for outright. I'm not sure on that. But if there was Teresa would have paid it. Who paid the taxes on the property? Teresa. And I'd like to just clear up. Can we go back to this shifting household scenario? Let's say two residences under under your view it's wherever the for your from your perspective the policyholder who is the head of the household where that person is is what determines the household? I think it's where the family unit is and under the same management and that would be where the policyholder was. So let's say there are two residences and the policyholder is in a different residence from the rest of his family at some point. So it's your contention that if the policyholder is not with the rest of the family unit at that time they cannot be considered part of that policyholders household? No I think that it depends on whether or not there's a in that situation the policyholder would occasionally go somewhere else and might have established a residence there but his household is where his family is where the family unit typically manages expenses and operations from. So in this case two different places but the policyholders in one place that's separate from the rest of the family. Right, but the family management still occurs at the the house where he... So it would be your position it's where the policyholder is at that time? I mean it depends on the factual situation but that doesn't really apply here. Yeah so I mean it really depends on the factual situation but the Georgia law is clear that it depends on the family unit living under the same roof. And I do want to real quick clear up the testimony a little bit for from Teresa Davis because the Housing Council misstated it just a bit. The question she was asked was after you started the assistant living business there did you ever live at the 503 East Jefferson Street house and her answer was all my life. And she qualified that by saying that's where I grew up. But didn't she also say she stayed weekends at the Highway 308 property? Yes and the question is... So the all my life can't be taken literally. Right well here's the case of Mixon is like demonstrative because in Mixon the father occasionally I mean the son stayed during the week at his apartment in Atlanta but moved back to his father's household on weekends. In that case the father's household was at his house. He didn't they didn't find that the household was at the apartment in Atlanta. I mean if the father never stayed at the apartment in Atlanta. Well well the case in Rainey comes to mind there because the father in that case did occasionally stay at his daughter's house. He maintained a bedroom there. He kept some of his belongs there and he had the daughter on utility bills. But they still found that they could maintain two separate households so the apartment because the father had a separate apartment. All right thank you both very much. Thank you. All right our last case is number